## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MARRIOTT INTERNATIONAL, INC.

               Plaintiff,

      v.

SPERLING KENNY NACHWALTER, LLC, and HILLIARD, MARTINEZ & GONZALES, LLP, d/b/a HILLIARD LAW,

             Defendants.

Case No. 26-cv-900

Judge Matthew J. Maddox

Oral Argument Requested

## DEFENDANTS' JOINT BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR STAY PROCEEDINGS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION ....................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND....................................................... 3

    A.    The Maryland Professional Rules of Responsibility ............................... 3

    B.    Marriott uses pixel tracking on Marriott.com.......................................... 4

    C.    Defendants notify Marriott of claims, and file arbitrations against Marriott, on behalf of claimants. ............................................................. 4

    D.    Marriott sits on its supposed rights for a year......................................... 5

    E.    Defendants move to dismiss, and Marriott tries to pivot. ...................... 7

ARGUMENT............................................................................................................... 7

    I.    Marriott's Disqualification Claims must be dismissed........................... 8

        A.    Marriott is not entitled to assert conflicts on behalf of its adversaries. ..................................................................................... 8

        B.    Marriott lacks Article III standing to seek Defendants' disqualification. ........................................................................ 11

        C.    Marriott cannot state a plausible claim. ................................... 13

            1.    Marriott pleads remedies without a claim to warrant them................................................................................ 14

            2.    Marriott's group-pleading allegations do not plausibly ascribe wrongful conduct to either Defendant................ 15

            3.    Marriott fails to allege an actual conflict or establish that Defendants are necessary witnesses.............................. 17

    II.    Marriott's Economic Claims must be dismissed. ................................. 18

        A.    Marriott cannot plead a viable claim for tortious interference. 19

        B.    Marriott fails to plead a viable Lanham Act claim. ................... 21

III.   In the alternative, and should any aspect of Marriott's FAC survive, the Court should stay these proceedings in favor of the underlying arbitrations. ...................................................................................... 28

CONCLUSION .................................................................................................... 29

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,
  650 A.2d 260 (Md. 1994)................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 13, 16

*Bagwell v. Peninsula Reg'l Med. Ctr.*,
  665 A.2d 297 (Md. Ct. Spec. App. 1995) ...............................................21

*Baltimore Sports & Social Club, Inc. v. Sport & Social, LLC*,
  228 F. Supp. 3d 544 (D. Md. 2017) ........................................................21

*Blondell v. Littlepage*,
  991 A.2d 80 (Md. App. 2010)............................................................... 10, 15

*Brown & Williamson Tobacco Corp. v. Daniel International Corp.*,
  563 F.2d 671 (5th Cir. 1977) ...................................................................13

*Brown v. Bd. of Educ. of Prince George's Cnty., Maryland*,
  No. CV DLB-20-2632, 2022 WL 888424 (D. Md. Mar. 25, 2022)............... 1, 4, 9, 15

*Buchanan v. Gay*,
  2006 WL 2709401 (Del. Super. Ct. Sept. 21, 2006) ..............................10

*Capital Meats, Inc. v. Meat Shoppe, LLC*,
  No. CIV. JFM-15-212, 2015 WL 4249166 (D. Md. July 9, 2015) ...........21

*CGM, LLC v. BellSouth Telecomms., Inc.*,
  664 F.3d 46 (4th Cir. 2011) .......................................................................14

*City of Charleston, West Va. v. Joint Comm'n*,
  473 F. Supp. 3d 596 (S.D. W. Va. 2020)..................................................14

*Colyer v. Smith*,
  50 F. Supp. 2d 966 (C.D. Cal. 1999)................................................... 9, 11

*CytImmune Sciences Inc. v. Pacciotti*,
  2017 WL 57213 (D. Md. Jan. 5, 2017) ....................................................10

iii

*Design Gaps, Inc. v. Distinctive Design & Constr. LLC,*
    162 F.4th 452 (4th Cir. 2025) ...................................................................27, 28

*Diamond Resorts International, Inc. v. Aaronson,*
    371 F. Supp. 3d 1088 (M.D. Fla. 2019) .......................................................23, 24

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,*
    213 F.3d 175 (4th Cir. 2000) ...........................................................................13

*Elias v. Am. Fin. Res.,*
    Civ. No. 24-489-BAH, 2026 WL 479069 (D. Md. Feb. 20, 2026)...........................17

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ........................................................................................11

*Gonzalez v. Provost Umphrey Law Firm L.L.P.,*
    2008 WL 11462938 (S.D. Tex. Mar. 13, 2008)......................................................9

*Gross v. SES Americom,*
    307 F. Supp. 2d 719 (D. Md. 2004) ..............................................................10, 13

*Hibbard Brown & Co., Inc. v. ABC Family Trust,*
    772 F. Supp. 894 (D. Md. 1991)........................................................................29

*Hibbard Brown & Co., Inc. v. ABC Family Trust,*
    959 F.2d 231 (4th Cir. 1992) ............................................................................29

*IGEN Intern., Inc. v. Roche Diagnostics GmbH,*
    335 F.3d 303 (4th Cir. 2003) ............................................................................24

*In re Caesars Ent. Operating Co., Inc.,*
    561 B.R. 420 (Bankr. N.D. Ill. 2015)...................................................................9

*In re Yarn Processing Patent Validity Litig. v. Leesona Corp.,*
    530 F.2d 83 (5th Cir. 1976) ..............................................................................11

*Jeandron v. Bd. of Regents of Univ. Sys. of Md.,*
    510 Fed. Appx. 223 (4th Cir. 2013) .....................................................................5

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1998) ..........................................................................12

*Kevlik v. Goldstein,*
    724 F.2d 844 (1st Cir. 1984)............................................................................13

iv

*Kleiman v. Wright*,
  662 F. Supp. 3d 1247 (S.D. Fla. 2023) ................................................................. 11

*Klupt v. Krongard*,
  728 A.2d 727 (Md. Ct. Spec. App. 1999) ............................................................... 18

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
  2011 WL 5024281 (N.D. Cal. Oct. 13, 2011) ........................................................ 22

*Lloyd v. Balt. Police Dep't*,
  729 F. Supp. 3d 494 (D. Md. 2024) ........................................... 4, 10, 12, 28

*Matter of Sandahl*,
  980 F.2d 1118 (7th Cir. 1992) ............................................................................. 11

*McClain v. Wells Fargo Bank, N.A*,
  2018 WL 1271231 (D. Md. Mar. 8, 2018) ............................................................. 10

*McGriff v. Christie*,
  477 F. App'x 673 (11th Cir. 2012) ....................................................................... 13

*Melamed v. ITT Continental Baking Co.*,
  592 F.2d 290 (6th Cir. 1979) ............................................................................... 13

*Mixter v. Farmer*,
  81 A.3d 631 (Md. Ct. Spec. App. 2013) ............................................................... 20

*Navient Solutions, LLC v. Lohman*,
  136 F.4th 518 (4th Cir. 2025) ........................................................... 24, 25, 26

*Nirala v. Adhali*,
  2019 WL 3457661 (D. Md. July 31, 2019) ........................................................... 10

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978) ............................................................................................. 23

*Painter's Mill Grille, LLC v. Brown*,
  716 F.3d 342 (4th Cir. 2013) ............................................................................... 18

*PBM Prods., LLC v. Mead Johnson & Co.*,
  639 F.3d 111 (4th Cir. 2011) ........................................................................ 26, 27

v

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010) ................................................................. 22

*Reichardt v. Flynn*,
  823 A.2d 566 (Md. App. 2003) ............................................................... 20

*Rojas v. Huntington Neighborhood Assoc.*,
  2022 WL 616815 (D. Md. Mar. 1, 2022)................................................. 10

*Sayyed v. Wolpoff & Abramson, LLP*,
  733 F. Supp. 2d 635 (D. Md. 2010) ....................................................... 10

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ................................................................. 22

S*CPS, LLC et al. v. Kind Law et al.*,
  Index No. NY 152508/2025 (NY Sup. Ct. Mar. 31, 2026) ....................... 2

*Seawright v. M. Shanken Commc'ns, Inc.*,
  No. CIV. JKB-14-1326, 2014 WL 4258311, (D. Md. Aug. 26, 2014) ....... 20

*Sierra Shelving, Inc. v. Design Assistance Constr. Sys., Inc.*,
  2008 WL 11512374 (E.D. Va. Apr. 1, 2008)........................................... 23

*SITEL Corp. v. Stonebridge Life Ins. Co.*,
  2007 WL 9780537 (D. Md. July 23, 2007) ...................................... 10, 13

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950) ............................................................................... 14

*Stratagene v. Parsons Behle & Latimer*,
  315 F. Supp. 2d 765 (D. Md. 2004) ....................................................... 10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................... 7, 11

*United States v. Bundy*,
  2008 WL 4133857 (D. Md. Sept. 2, 2008) ...................................... 10, 13

*United States v. Clarkson*,
  567 F.2d 270 (4th Cir. 1977) ........................................................... 10, 13

*United States v. Rogers*,
  9 F.3d 1025 (2d Cir. 1993)..................................................................... 12

vi

*Valve Corp. v. Bucher L. PLLC,*
  571 P.3d 312 ............................................................................................................ 2, 20

*Williams v. Am. Arb. Ass'n, Inc.,*
  No. 25-CV-2505-ABA, 2026 WL 83940 (D. Md. Jan. 12, 2026) .............................. 20

Statutes

15 U.S.C. § 1125(a) ......................................................................................... 22, 23

Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 13

## INTRODUCTION

This is a lawsuit that should never have been filed once, let alone twice.[1] Marriott initially brought a freestanding federal lawsuit whose sole object was to strip nearly 7,000 claimants of their chosen counsel in ongoing arbitrations. Dkt. 1. That Complaint identified no basis for federal jurisdiction, nor even a cause of action supporting its remarkable position—only three overlapping requests for remedies ("Disqualification Claims") that require (but lack) an underlying substantive right the Complaint never pleaded. Marriott has now had two bites at the apple and only succeeded in establishing, definitively, that it will never be able to plead the existence of an underlying cause of action supporting disqualification. This is no surprise, because "[a] violation of the Maryland Professional Rules of Responsibility does not give rise to a private cause of action against an attorney." *Brown v. Bd. of Educ. of Prince George's Cnty., Maryland*, No. CV DLB-20-2632, 2022 WL 888424, at *4 (D. Md. Mar. 25, 2022) (collecting cases).

So Marriott pivoted. In its First Amended Complaint (Dkt. 38-1), Marriott now adds to its Disqualification Claims that Defendants should not have been able to engage their clients in the first instance, supposedly because communicating with actual and prospective clients about Marriott's conduct was impermissible under the Lanham Act and intentionally interfered with Marriott's prospective business relationship with those individuals (the "Economic Claims"). But those belated

---

[1] In this brief, Marriott International, Inc. is "Marriott," Sperling Kenny Nachwalter, LLC is "Sperling," and Hilliard, Martinez & Gonzales, LLP is "Hilliard."

claims fare no better. Even setting aside that Marriott identifies no purportedly false *factual* statement—it admits to its use of pixels and tracking technologies, and disputes only the legal consequences of that conduct—Defendants' communications with actual and prospective clients, like their litigation conduct on those clients' behalf, are privileged and immune from liability under Marriott's theories.

Marriott's erratic litigation—which attempts to use the Maryland federal forum Marriott denies its customers, to interfere with arbitration conduct Marriott admits is focused on California consumers, Dkt. 38-1 ¶ 62—betrays the real purpose of this lawsuit: to punish law firms that represent workers and consumers in meritorious suits by raising their costs. Marriott's suit is one link in a long chain of collateral attacks on arbitration, touted by the corporate defense bar as a way to turn the tables when faced with substantial consumer protection, antitrust, or employment claims in arbitration.[2] Unsurprisingly, courts have repeatedly shut down these lawsuits.[3] Marriott's lawsuit is just the latest iteration and deserves the same fate. The Court should dismiss the FAC and end Marriott's smear campaign.

---

[2] *See, e.g.*, Gibson Dunn, "Arbitration Agreement Enforceability and Mass Arbitration," at 30 (continuing legal education presentation identifying as a "risk management" strategy for combatting consumer arbitrations: "Remain vigilant to potential ethical violations, such as . . . Conflicts of interest[.]"), https://www.gibsondunn.com/wp-content/uploads/2026/02/WebcastSlides-Arbitration-Agreement-Enforceability-and-Mass-Arbitration-29-JAN-2026.pdf.

[3] *See Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312, 321 and n.6 (Wash. Ct. App. 2025), review denied, 579 P.3d 792 (2025) (dismissing suit against law firms: "Valve is hoist by its own contractual petard" because "[t]he conduct Valve complains of—the filing of thousands of individual arbitration requests—is a direct result of its own agreement barring class actions and prohibiting collective or representative arbitration"); *SCPS, LLC et al. v. Kind Law et al.*, Index No. NY 152508/2025, NYECF Doc. No. 206 (NY Sup. Ct. Mar. 31, 2026), https://www.nycourts.gov

Alternatively, and if any portion of Marriott's Amended Complaint survives, the Court should stay these proceedings. Rather than endorsing Marriott's attempt to collaterally attack the arbitrations it forces upon its users, the Court should stay any surviving portion of Marriott's Amended Complaint in favor of the ongoing, underlying arbitrations, where all of Marriott's issues will or could be resolved.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Maryland Professional Rules of Responsibility

The Maryland Rules of Professional Responsibility are "rules of reason." Md. Rule 19-300.1, Scope. Rule 3.7 sensibly limits lawyers from acting as advocates in the rare case where, "at *trial* . . . the attorney is *likely* to be a *necessary* witness." Md. Rule 19-303.7.[4] Rule 1.7 requires an attorney excuse himself or herself from a representation if "there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of an attorney." Md. R. 19-301.7.

The Maryland Rules are addressed to attorneys (for the purpose of self-regulation) and disciplinary bodies. Md. Rule 19-300.1, Scope. The Rules "are not designed to be a basis for civil liability" and "can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* The Rules further provide that "an antagonist in a collateral proceeding or transaction" lacks "standing to seek

---

/reporter/current/3dseries/2026/2026_26049.shtml (dismissing suit against law firms: "Defendants' filing of Complaints on behalf of website users with AAA constitutes lawful conduct in furtherance of the website users' right to petition in the sole forum that Plaintiffs' contractually mandated its website users to seek redress from").

[4] Unless otherwise specified, all internal citations, quotation marks, and alterations are omitted from quotations throughout this brief.

enforcement of the Rule." *Id.* The Maryland Rules "expressly caution that motions to disqualify 'should be viewed with caution . . . for [they] can be misused as a technique for harassment.'" *Lloyd v. Balt. Police Dep't*, 729 F. Supp. 3d 494, 499 (D. Md. 2024). A violation of the Maryland Rules unequivocally "does not give rise to a private cause of action." *Brown*, 2022 WL 888424, *4.

### B.    Marriott uses pixel tracking on Marriott.com.

Marriott admits to using "third-party website technologies, including cookies and pixels," on its website. Dkt. 38-1 ¶ 39. Pre-litigation demand letters attached to the Complaint describe those practices in greater detail. (Dkt. 38-1 Ex. B at 1, 3.)

### C.    Defendants notify Marriott of claims, and file arbitrations against Marriott, on behalf of claimants.

In December 2024, counsel for a group of Marriott consumers ("claimants") assert that Marriott's "Website … includes one or more pieces of electronic code that caused our clients' personal information to be relayed, without their knowledge or consent, to one or more other companies, including but not limited to Meta/Facebook." Dkt. 38-1 Ex. B at 3. A January 2025 letter reiterated and fleshed out those allegations. Dkt. 38-1 Ex. B at 1.

In June 2025, claimants initiated actions against Marriott. Dkt. 38-1 ¶ 97. Because Marriott's Terms of Use require that "any dispute arising out of or related to the Sites … will be submitted for and resolved by binding arbitration before the American Arbitration Association (AAA),"[5] Claimants initiated their actions in

---

[5] Marriott's operative Terms of Use are available at: https://web.archive.org/web/20250124195814/https://www.marriott.com/about/terms-of-use.mi. The Court is

arbitration before the AAA. Marriott avers in the FAC that simply "using its website" constitutes "consent" to Marriott's policies. (Dkt. 38-1 ¶ 41.)

The central issue raised in claimants' arbitrations is whether Marriott's admitted use of pixels, cookies and other technologies is unlawful. Marriott avers that its conduct is "entirely lawful." Dkt. 38-1 ¶ 15. The Demands for Arbitration (which Marriott references in its FAC, Dkt. 38-1 ¶ 46), explain in detail how and why that is wrong. *See* Dkt. 13 Ex. A to Ex. 2. The legality of Marriott's admitted use of pixels and other technologies will be decided in those underlying arbitrations.

### D.    Marriott sits on its supposed rights for a year.

Marriott initially responded to claimants' threatened claims through counsel on March 26, 2025, accusing Defendants of using pixels on client-intake websites. Dkt. 38-1 ¶¶ 87-93 & Ex. A. Marriott asserted that this purported conduct created "a direct, disqualifying conflict of interest." *Id.* at 53. Marriott specifically identified a website alerting potential claimants that "Marriott *may* have sold your personal info without your consent."[6] *Id.* Ex. A at 1.

Defendants investigated Marriott's allegations and responded on April 25, 2025, explaining Marriott was "simply wrong as a factual matter" and that the intake websites identified by Marriott did not pass any form information to any third parties. *See* Dkt. 38-1 at 139.

---

entitled to take judicial notice of these terms for purposes of this Motion. *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 Fed. Appx. 223, 227 (4th Cir. 2013).

[6] This is nearly identical to the website post Marriott excerpts in its FAC. *See* Dkt. 38-1 ¶ 3 (website post stating "Marriott may have captured and sold your private data … without your knowledge," and that doing so "isn't just wrong—it's illegal").

Despite its March 2025 declaration that a "direct, disqualifying conflict" existed, Marriott did nothing to press any conflict issue for nearly twelve months. In fact, Marriott's own pleadings, and the filings in this Court, reflect that at no point did Marriott seek disqualification—or, indeed, any relief at all—based on the alleged conflict between the filing of the arbitration demands and its action in this Court. Dkt. 38-1 ¶ 102.  Marriott concedes that it had numerous opportunities to do so, including in its brief before the process arbitrator appointed at Marriott's insistence in January 2026.[7] Dkt. 38-1 ¶ 101. Likewise, despite its March 2025 complaint about substantially the same web post excerpted in the FAC, Marriott never raised supposed false advertising concerns, or potential harm to its business as a result of Defendants' engagement with and representation of claimants, for more than a year.

Instead, in March 2026, while the arbitrations were ongoing and briefing there was underway, Marriott filed this suit, then filed a motion to stay the arbitrations based on this suit's existence. Dkt. 38-1 ¶ 105. Back in this Court, and before the deadline for Defendants' answer or a motion to dismiss was due, Marriott filed a lengthy motion to disqualify accompanied by two expert declarations—one from a claimed computer-science expert, another from an attorney who opines on the law of attorney ethics—and the declaration of Marriott's counsel, Alex Terepka.

---

[7] AAA rules permit the appointment of a "process arbitrator" to evaluate threshold issues in a mass arbitration, like satisfaction of filing requirements and the selection process for merits arbitrators. *See* American Arbitration Association, Mass Arbitration Supplementary Rules, R. MA-6, https://www.adr.org/media/ofkbtyz2/mass-arbitration-supplementary-rules.pdf.

Dkt. 13. In April 2026, the process arbitrator stayed arbitration proceedings in light of this lawsuit and Marriott's disqualification motion. Dkt. 38-1 ¶ 105.

### E.    Defendants move to dismiss, and Marriott tries to pivot.

Defendants moved to dismiss the initial Complaint in May 2026. Dkt. 30-1. Defendants pointed out that Marriott lacked standing and failed to establish subject-matter jurisdiction to bring its Disqualification Claims, in particular because Marriott (as an adversary) lacked standing to challenge claimants' choice of counsel and could not satisfy the requisite amount in controversy for diversity jurisdiction. Dkt. 30-1 at 18-20. Rather than respond to those independently fatal arguments, Marriott amended as of right on May 29, 2026, belatedly adding Count IV under the Lanham Act and Count V for intentional interference, in an effort to conjure the federal-question and diversity jurisdiction its original Complaint lacked.

ARGUMENT

Marriott asserts two sets of claims, all of which fail as a matter of law.

Marriott's Disqualification Claims fail for the same reasons they failed the last time around, in particular because Marriott (1) cannot assert conflicts on behalf of its adversaries, (2) cannot establish Article III standing as to its Disqualification Claims, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (standing "is not dispensed in gross"), and (3) did not and cannot state a plausible claim for relief.

Marriott's Economic Claims likewise fail. Marriott alleges that Defendants' litigation and related activity—including alerting claimants to the admitted fact that Marriott uses pixels and other tracking technologies, explaining the potential legal consequences of Marriott's conduct, and filing arbitrations on claimants'

7

behalf—purportedly rendering Defendants liable under the Lanham Act and for intentional interference with prospective business advantage. But in its allegations, Marriott identifies no false *factual* statement; to the contrary, Marriott admits to the *fact* that it uses pixels and tracking technologies. Dkt. 38-1 ¶¶39-40. Instead, Marriott disputes only the *legal significance* of the undisputed facts, including whether Marriott's conduct violates CIPA, a California criminal statute designed to protect privacy. That dispute is not a basis for liability under the Lanham Act or Maryland law. And even setting aside that dispositive issue, Defendants are immune from liability for their conduct in communicating with actual and prospective clients, and preparing and litigating claims on behalf of claimants, pursuant to Maryland's common-law immunity and the *Noerr-Pennington* doctrine.

Finally, in the event Marriott were able to establish that any of its claims in this case can proceed, this matter should be stayed while the arbitrations proceed. This Court should reject Marriott's attempt to collaterally attack the very arbitration proceedings it forces upon its customers by filing a freestanding federal lawsuit, in the very forum it denies to its customers, seeking to strip claimants of the counsel of their choice. And the central question raised by Marriott's Economic Claims—whether factual statements about Marriott's conduct were true or false— necessarily will be decided in the underlying arbitrations, which focus directly on whether Marriott's conduct violated the law.

## I.   Marriott's Disqualification Claims must be dismissed.

Marriott's Disqualification Claims should be dismissed for three reasons.

### A.   Marriott is not entitled to assert conflicts on behalf of its adversaries.

Marriott grounds its Disqualification Claims on the accusation that, in the underlying arbitrations, the lawyers for its opponents have "grave conflicts of interest." Dkt. 38-1 ¶ 7. Marriott claims it is entitled to relief because its arbitration opponents need new lawyers who can provide "the benefit of unconflicted, loyal counsel." *Id.* ¶ 14; *see also id.* ¶¶ 15-19, 81, 85, 91.

Marriott cannot bring a collateral case to disqualify its opposing counsel. The answer might be different if Marriott were a former client whose confidential information was being used against it, such that Marriott would have an actual, concrete interest in protecting that information. *E.g.*, *Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999) ("The majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client."). But Marriott makes no such allegation, instead invoking Rules 1.7 (conflicts of interest) and 3.7 (attorneys as witnesses). Dkt. 38-1 ¶¶ 67, 73. And the Rules *expressly state* that they "are not designed to be a basis for civil liability." Md. R. 19-300.1, Scope. An alleged violation "does not give rise to a private cause of action against an attorney." *Brown,* 2022 WL 888424, *4. And the Rules warn they "can be subverted when they are invoked by opposing parties as procedural weapons." Md. R. 19-300.1, Scope.[8]

---

[8] It is not clear Maryland's rules apply: None of Hilliard's or Sperling's partners practice in Maryland, and neither concedes that Maryland law applies. *See* Dkt. 38-1 ¶¶ 26-27. But it is sufficient to observe that the result would be the same in any relevant jurisdiction. *See*, *e.g.*, *Gonzalez v. Provost Umphrey Law Firm L.L.P.*, 2008 WL 11462938, *4 (S.D. Tex. Mar. 13, 2008) ("Texas law instructs that no private right of action exists for violations of the disciplinary rules."); *In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 420, 438 n.7 (Bankr. N.D. Ill. 2015) ("[T]he violation of

9

Relevant decisions, federal and state, confirm there is no private right of action to enforce the Rules.[9] To be sure, courts have "inherent power" to "control the proceedings (and the lawyers) *before them*." *Lloyd*, 729 F. Supp. 3d at 500 (emphasis added). It is through that inherent power that courts sometimes disqualify lawyers in cases pending before them. *Id.* But the words "inherent powers" are not magical, and the words "before them" matter: Marriott cannot bring a freestanding, collateral action to disqualify opposing counsel in separate proceedings. That, in turn, is why Marriott's disqualification decisions involve motions filed in, and pertaining to, *already existing* lawsuits.[10]

---

a Rule is no more than that. It gives rise to no cause of action, provides no basis for civil liability, and does not necessarily warrant disqualification of a lawyer in pending litigation."); *Buchanan v. Gay*, 2006 WL 2709401, *4 (Del. Super. Ct. Sept. 21, 2006) ("Violation of a Rule should not itself give rise to a cause of action.").

[9] *See, e.g., Rojas v. Huntington Neighborhood Assoc.*, 2022 WL 616815, *7 (D. Md. Mar. 1, 2022) ("[A] rules violation is not tortious conduct that gives rise to a civil conspiracy claim."); *McClain v. Wells Fargo Bank, N.A,*, 2018 WL 1271231, at *8 (D. Md. Mar. 8, 2018) (alleged violation of Rule 3.3 would not create cause of action); *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646 (D. Md. 2010) (same for allegedly false statements); *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 774 (D. Md. 2004) (same for alleged violations of Rule 1.9); *Nirala v. Adhali*, 2019 WL 3457661, *5 (D. Md. July 31, 2019); *see also Blondell v. Littlepage*, 991 A.2d 80, 96 n.9 (Md. App. 2010) (Rules violation "may not serve as a basis for civil liability, as expressed in the preamble to the Rules of Professional Conduct").

[10] *See, e.g., Lloyd*, 729 F. Supp. 3d at 496–97; *SITEL Corp. v. Stonebridge Life Ins. Co.*, 2007 WL 9780537, at *1 (D. Md. July 23, 2007) (party sought to disqualify opposing counsel "in this case"); *United States v. Bundy*, 2008 WL 4133857, at *3 (D. Md. Sept. 2, 2008); *Gross v. SES Americom*, 307 F. Supp. 2d 719, 721 (D. Md. 2004); *CytImmune Sciences Inc. v. Pacciotti*, 2017 WL 57213, *1 (D. Md. Jan. 5, 2017) (lawyer drafted contract for company that he later challenged on behalf of plaintiff); *United States v. Clarkson*, 567 F.2d 270, 271 (4th Cir. 1977) (criminal proceeding). This notion—that, where a party has standing to assert a conflict, the assertion should be made before the tribunal in which the case is pending—

10

### B.    Marriott lacks Article III standing to seek Defendants' disqualification.

Marriott lacks Article III standing to pursue its disqualification claims.[11] Marriott "must demonstrate (i) that [it] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant[s], and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Marriott cannot show an injury in fact because it cannot be injured by purported conflicts of its *opponents'* lawyers. *See, e.g., In re Yarn Processing Patent Validity Litig. v. Leesona Corp.*, 530 F.2d 83, 88 (5th Cir. 1976) ("As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."); *Colyer*, 50 F. Supp. 2d at 972 (explaining that, "regardless of the contents of the applicable rules of conduct, an attorney can have no sufficiently personal 'injury in fact' based on the conflict status of her opposing counsel to move to disqualify that adversary," and holding that a party "has no legally cognizable interest in" opposing counsel's purported "breach of its duties owed to" someone else); *Kleiman v. Wright*, 662 F. Supp. 3d 1247, 1255-56 (S.D. Fla. 2023) (party seeking to disqualify opposing counsel lacked standing).[12]

---

confirms, as Defendants argue *infra* (at 12-13, 28-29), that *if* Marriott were able to raise Defendants' supposed conflicts, it should do so in the underlying arbitrations.

[11] Standing "is not dispensed in gross," and Marriott must establish standing separately for each claim and each form of relief. *TransUnion*, 594 U.S. at 431. Thus, Marriott cannot borrow standing to seek disqualification from its Lanham Act and intentional interference claims, which focus on different supposed issues and seek different remedies.

[12] These decisions are not outliers. *See, e.g., Matter of Sandahl*, 980 F.2d 1118, 1121 (7th Cir. 1992) (reversing disqualification of opposing counsel as "patently

Marriott nevertheless argues that it is damaged because it is incurring expense in the underlying arbitrations. Dkt. 38-1 ¶ 55. But Marriott's arbitration expense is not the result of any purported Rules violation; it is the result of Marriott having to defend the arbitrations in the first instance, as Marriott's Terms of Use require. *Supra* at 4-5. In the same way, disqualification could not "redress" the arbitration expense Marriott is incurring because, as Marriott specifically contemplates in its prayer for relief, disqualification would merely give claimants the opportunity to secure different counsel to pursue the same claims Marriott is defending now. Dkt. 38-1 at 42 ("claimants may have the opportunity to obtain loyal, unconflicted counsel"). Thus, even if its self-imposed arbitration obligations constituted an injury, no disqualification ruling from this Court would redress it.

Marriott attempts to sidestep these issues by arguing that the inherent powers of the Court confer upon Marriott standing to pursue a cause of action in this Court for disqualification. Dkt. 38-1 ¶¶ 19–20. But again, courts have "inherent power" to "control the proceedings (and the lawyers) *before them.*" *Lloyd*, 729 F. Supp. 3d at 500 (emphasis added). Those powers do not give courts freestanding power to entertain collateral attacks on *other* proceedings. Thus, where courts have held one party's counsel has standing to pursue disqualification of another's, they have done so in cases already before them, based upon violations committed by

---

erroneous"); *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993) ("No case has been called to our attention, and we are aware of none, in which an attorney has been disqualified on grounds of conflicting prior representation solely at the behest of a person other than the former client or its privy."); *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) (same; quoting *Rogers*).

12

counsel within those cases, like *United States v. Clarkson*, 567 F.2d 270, 273 (4th Cir. 1977). No authority cited by Marriott is to the contrary.[13]

In sum, Marriott is not entitled to seek disqualification of its opponents' counsel based on supposed conflicts with those opponents—at all, and certainly not in a collateral proceeding. The Court should hold that Marriott cannot seek disqualification of its adversaries' counsel and dismiss the Disqualification Claims.

## C.    Marriott cannot state a plausible claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As always, the Court need not and should not credit the plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

---

[13] *See Clarkson*, 567 F.2d at 271 (4th Cir. 1977) (upholding court's disqualification of criminal defendant from serving as counsel for fact witnesses to fraud that was the basis of the criminal case before the court); *Bundy*, 2008 WL 4133857, at *3 (upholding court's disqualification of criminal defendant's counsel in criminal proceeding before it); *Gross*, 307 F. Supp. 2d at 721; *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) (standing to seek disqualification of opponent's counsel in ongoing litigation based on conflict within that case); *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671, 673 (5th Cir. 1977) (disqualification of counsel based on violations of rules by counsel in the case before the court); *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979) (counsel in ongoing litigation had standing to move to disqualify counsel for opponent in that litigation); *McGriff v. Christie*, 477 F. App'x 673, 676–77 (11th Cir. 2012) (finding standing for counsel to pursue disqualification of opponent's counsel who had previously withdrawn from same litigation due to conflict); *SITEL*, 2007 WL 9780537, at *1 (party sought opposing counsel's disqualification "in this case").

Marriott does not come close to pleading a plausible claim. Each of its Disqualification Claims rests on the same factual predicate: that "Hilliard, Sperling Kenny, *or agents acting on their behalf*" used the "same pixels" on client-intake websites that Marriott uses on Marriott.com; that those pixels "disclosed the *contents* of prospective clients' webform submissions" and "transmitted client names, contact information, and the substance of requests for legal assistance to third parties"; and that this purportedly creates a disqualifying conflict of interest. Dkt. 38-1 ¶¶ 60, 63, 65, 75, 76, 79, 84, 108 (first emphasis added). But none of Marriott's Disqualification Claims is an actual cause of action, Marriott's resort to group-pleading comes nowhere close to providing a plausible basis for finding a conflict of interest on the part of Defendants, and the conduct Marriott alleges would not make Defendants necessary witnesses in any event.

### 1.    Marriott pleads remedies without a claim to warrant them.

Marriott styles the first count of its FAC as a claim for "[d]isqualification of [c]onflicted [c]ounsel." Dkt. 38-1 ¶¶ 107–113. The other two counts—for a declaratory judgment and an injunction, *id.* ¶¶ 114–124, 125–133—are likewise remedies for Marriott's purported claim to challenge the sufficiency of its opponents' lawyers in the underlying arbitrations.[14] Marriott relies on Rules 1.7 and 3.7 in

---

[14] *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only.") (cleaned up); *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) ("A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.") (cleaned up); *City of Charleston, West Va. v. Joint Comm'n*, 473 F. Supp. 3d 596, 632 (S.D. W. Va. 2020) (dismissing action

14

support of those claims. Dkt. 38-1 ¶¶ 68-69, 73 & pp. 41-43. But again, the Rules do not provide private rights of action, *Brown*, 2022 WL 888424, at \*4, and purported violations "may not serve as a basis for civil liability[.]" *Blondell*, 991 A.2d at 96 n.9. Thus, Marriott cannot plead a claim challenging the sufficiency of claimants' counsel.

### 2.   Marriott's group-pleading allegations do not plausibly ascribe wrongful conduct to either Defendant.

Because Marriott's claims are terminally flawed, the Court need not reach the substance of its allegations against Defendants. But for the avoidance of doubt, and even taking any non-conclusory allegations in Marriott's Amended Complaint as true, Marriott has not plausibly alleged wrongful conduct by either Defendant.

Marriott suggests that each Defendant used "the same pixels" as Marriott and in a "far more invasive manner." Dkt. 38-1 ¶ 6 (emphasis omitted). But Marriott's specific allegations do not come close to supporting that conclusory accusation. Instead, Marriott relies on crafty pleading to disguise its failure to allege facts that show *either* firm did anything wrong.

In particular, while searching for an example of actionable wrongdoing, Marriott groups together both law firms *and* any number of unidentified IT vendors, alleging for example that "Hilliard, Sperling Kenny, *or agents they are responsible for* installed [the pixel] on the Money Team website[.]" *Id.* ¶ 60 (emphasis added). Marriott never specifically alleges that Hilliard or Sperling installed *any* pixel on

and injunction request because "an injunction is merely a remedy flowing from the underlying substantive claims rather than an independent cause of action itself").

15

*any* website, instead alleging that *someone* installed pixels on websites and Marriott *does not know* who did so. Nowhere does Marriott allege a plausible basis for concluding that either firm even *knew* a pixel was installed, much less that each firm deployed any pixels itself.

Worse, despite the naked claim that Defendants' supposed conduct was more invasive than that of Marriott, Marriott's complaint fails to allege with specificity that substantive information about any claimant was transferred via a client-intake website to third parties at all[15]—unlike Claimants' detailed allegations that Marriott secretly transferred their private information to Meta, LinkedIn, and many others. *See* Dkt. 13, Ex. A to Ex. 2. Thus, Marriott seeks the extreme (and dubious) remedy of disqualification without ever alleging that either law firm installed any pixel *or* transferred any private information, all while conceding that the pixels about which Marriott complains may have been installed by someone else without even the knowledge of Defendants, much less at their instruction.

Marriott's group-pleading allegations do not satisfy the plausibility requirement in federal pleading. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged.")

---

[15] This would be egregious under any set of circumstances, but it is even worse here because Marriott commissioned an "expert" analysis of the client-intake websites at issue and, despite that analysis, the most Marriott's "expert" could say was that pixels on client-intake websites were *capable of* transmitting substantive communications—not that they actually did so. Dkt. 38-1 Ex. C (Schnell Decl.) ¶¶ 21, 63. And while Marriott also analyzed Defendants' websites, Marriott never alleges that any Claimant utilized either site as part of the client-intake process.

16

(emphasis added). Marriott cannot get past the plausibility requirement by alleging that *someone*, in a group of defendants *and non-defendants*, must have done something wrong. *See, e.g., Elias v. Am. Fin. Res.*, Civ. No. 24-489-BAH, 2026 WL 479069, at *7 (D. Md. Feb. 20, 2026) (dismissing complaint where plaintiff "impermissibly" lumped defendants together).

These were all terminal issues with the Disqualification Claims in the initial complaint. Dkt. 30-1 at 18-21. Marriott's attempts to address the issue—for example, by referencing the professional conduct rules regarding attorney advertising, Dkt. 38-1 ¶¶ 76—are unavailing; Marriott's reference to the substantive rules is a *non sequitur*, because this is not an attorney advertising issue, it is a substantive federal pleading issue. Marriott is under an obligation to specify the allegedly wrongful conduct by each defendant on a particularized basis, *supra* at 16-17. Marriott has failed to do so—twice.[16]

### 3. Marriott fails to allege an actual conflict or establish that Defendants are necessary witnesses.

Marriott's first theory of conflict requires Defendants to act in their own interest and contrary to claimants' interests. Dkt. 38-1 ¶ 83. But "mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss."

---

[16] To be clear, Defendants disagree with Marriott's allegations that any pixels on client-intake websites functioned in the same manner as Marriott's pixels—and Defendants explained this to Marriott before Marriott filed this suit. Dkt. 13-3 Ex. 2 (Terepka Decl.) Ex. D (Apr. 25, 2025 correspondence). Thus, it is equally incorrect for Marriott to say that Defendants "have actual knowledge" of a supposed fact that they denied. Dkt. 38-1 ¶ 77. But Marriott's mischaracterization is merely icing on the cake given the other failures of its claims.

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Marriott's speculation regarding what Defendants might do in the future is exactly the sort of allegation that this Court is entitled to disregard: there are no factual allegations in the Amended Complaint (as opposed to counterfactual speculation) to suggest that Defendants will do anything differently going forward than what they have already done, which is to vigorously litigate on claimants' behalf.[17]

Marriott's theory that Defendants are necessary witnesses makes even less sense. Disqualification based on the witness-advocate rule requires, *inter alia*, that the advocate witness be able to proffer material evidence. *Klupt v. Krongard*, 728 A.2d 727, 740 (Md. Ct. Spec. App. 1999). Marriott has failed to assert the necessary predicate: the claims in the underlying arbitration relate to *Marriott's* conduct, not other website operators' conduct. Dkt. 38-1 ¶ 83; Dkt. 38-1 Ex. C. There is no conceivable issue in the underlying arbitration that Defendants could testify about, let alone (i) a material issue (ii) as to which Defendants are *necessary* witnesses.

## II.    Marriott's Economic Claims must be dismissed.

Marriott's Disqualification Claims had, and still have, terminal procedural defects. So, to save its suit and gin up the jurisdiction its Disqualification Claims lack, Marriott supplemented its pleadings by attempting to allege claims under the

---

[17] The closest Marriott comes to authority on this point is a reference to comment 10 to Maryland Rule 1.7, on "Personal Interest Conflicts." Md. R. 19-301.7 cmt. 10. But the only personal interest conflicts identified are when an attorney's "conduct in a transaction is in serious question," if an attorney "has discussions concerning possible employment with an opponent of the attorney's client," or if the attorney has business related to that of his client. *Id.*

Lanham Act (Count IV) and for tortious interference with prospective business advantage (Count V). These Economic Claims likewise fail for several reasons.

Marriott's suit targets core First Amendment petitioning and advocacy activity. It alleges that Defendants impaired Marriott's commercial interests by accusing it "of criminal privacy violations" and urging "consumers to sever their relationships with Marriott by joining litigation against it," Dkt. 38-1 ¶¶ 137, 150, 151. The "publicity" campaign Defendants allegedly waged was "designed to generate substantial attention," to encourage consumers to bring claims to enforce their privacy rights under California law, and to educate consumers about Marriott.com's use of consumer data. *Id.* ¶¶ 136, 137, 139, 142. The statements Marriott highlights in its FAC as giving rise to liability are statements such as "Marriott may have sold your personal info without your consent," "Let us help you get compensated," and "Do I Have A Case?" *Id.* ¶ 58. The purported damages sought for this publicity campaign—damages to Marriott for its "economic and reputational harm," disgorgement of Defendants' profits from successful litigation against Marriott, the costs of Marriott's "corrective advertising," treble damages, and attorneys' fees to Marriott for having to defend the underlying suits—all flow directly from Defendants' pre-litigation advocacy activity. *Id.* at 42-43.

Accepting Marriott's (absurd) allegations as true, they cannot state plausible claims for relief for several reasons.

### A.    Marriott cannot plead a viable claim for tortious interference.

Marriott's intentional interference with prospective economic advantage claim under Maryland law fails for numerous reasons.

19

*First,* under Maryland law, attorneys have absolute immunity for statements that have "some rational relationship" to judicial or quasi-judicial proceedings. *Mixter v. Farmer,* 81 A.3d 631, 634 (Md. Ct. Spec. App. 2013); *see also Reichardt v. Flynn,* 823 A.2d 566, 575 (Md. App. 2003) (reversing judgment and holding that defamation action arising out of statements having relationship to private arbitration proceedings was barred by absolute privilege).[18] In a case involving the same privilege and analogous facts, the Washington Court of Appeals held that law firms representing thousands of consumers in arbitration were absolutely immune from the company's tortious-interference and abuse-of-process claims because that conduct was "pertinent" and "material" to the relief they sought for their clients. *Valve,* 571 P.3d at 320-21. The same conclusion applies here: Defendants have absolute immunity with respect to statements they made to actual and prospective clients in connection with bringing the underlying arbitrations, and Marriott's state-law claim therefore fails.

*Second,* in addition to this threshold issue, Marriott's FAC fails to adequately plead at least two elements of its claim.  Intentional interference requires (i) intentional and willful acts, (ii) calculated to cause damage, (iii) done with the

---

[18] *See also Seawright v. M. Shanken Commc'ns, Inc.,* No. CIV. JKB-14-1326, 2014 WL 4258311, at *5 (D. Md. Aug. 26, 2014), *aff'd sub nom. Seawright v. M. Shanken Commc'ns,* 594 F. App'x 132 (4th Cir. 2015) (applying Maryland absolute immunity for purportedly defamatory statements made by the defendant during arbitration); *Williams v. Am. Arb. Ass'n, Inc.,* No. 25-CV-2505-ABA, 2026 WL 83940, at *4 (D. Md. Jan. 12, 2026), *reconsideration denied,* No. 25-CV-2505-ABA, 2026 WL 237459 (D. Md. Jan. 29, 2026) ("As with judicial immunity, this privilege extends to quasi-judicial proceedings such as arbitration.") (citation omitted).

20

unlawful purpose to cause damage, and (iv) actual damage. *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297 (Md. Ct. Spec. App. 1995) (cited at Dkt. 38-1 ¶ 149).

Marriott fails at the first step, because the allegedly wrongful act must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Capital Meats, Inc. v. Meat Shoppe*, LLC, No. CIV. JFM-15-212, 2015 WL 4249166, at *9 (D. Md. July 9, 2015). Marriott does not even allege that the conduct at issue was wrong or unlawful, only that it was willful. Dkt. 38-1 ¶ 150. To the extent Marriott depends on its Lanham Act allegations to make out an unlawful act, the unlawful act element rises or falls with the Lanham Act claim, *Baltimore Sports & Social Club, Inc. v. Sport & Social, LLC,* 228 F. Supp. 3d 544, 551–52 (D. Md. 2017) (dismissing intentional interference claim once defamation hook had been dismissed), which fails for the reasons explained *infra* at 21-28.

Finally, Marriott will never be able to establish, and in fact does not even plead, that economic harm to Marriott (beyond its obligations in the arbitrations) was the *intent* of Defendants' acts. Intentional interference requires that Defendants acted with the specific purpose of harming Marriott's business. *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 270 (Md. 1994). The FAC does not plead that, and the proposition is absurd on its face because Defendants—who neither own nor operate hotels—are entirely agnostic as to Marriott's hospitality business. Dkt. 38-1 ¶ 152. In the absence of such an allegation, Marriott's intentional interference claim must be dismissed.

B.    **Marriott fails to plead a viable Lanham Act claim.**

21

In its desperate search to find a jurisdictional hook—this time through federal question jurisdiction—Marriott also attempts to allege a federal Lanham Act claim for false advertising. Dkt. 38-1, Count IV. But the Lanham Act is not a tool for collaterally attacking the lawyers of one's opponents, and Marriott comes nowhere close to pleading a plausible claim.

*First,* pleading a claim under the Lanham Act requires alleging a "false or misleading representation of fact." 15 U.S.C. § 1125(a); *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 272 (4th Cir. 2002). Statements of opinion, "including legal opinion, are not generally actionable as false statements under the Lanham Act" unless the statement "implies an assertion of objective fact" that is "susceptible of being proved true or false." *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2011 WL 5024281, at *11 (N.D. Cal. Oct. 13, 2011); *accord PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010). In its FAC, however, Marriott does not point to any *facts* that were falsely or misleadingly represented.

To the contrary, Marriott *concedes* the material facts—*i.e.*, that Marriott specifically designed and implemented a system for tracking its users using "third-party website technologies, including cookies and pixels[.]" *Compare* Dkt. 38-1 ¶ 39 *with id.* ¶ 46; *see also supra* at 4. What Marriott disputes are not the facts but, rather, the legal significance of those facts. As Marriott explains in its FAC, it believes Defendants "misled actual and prospective customers to believe that Marriott's use of standard pixel technology *constituted criminal wiretapping, a betrayal of trust, and an attempt to profit off customers' personal information*." Dkt.

22

38-1 ¶ 141 (emphasis added). But whether Marriott's use of pixels violates CIPA (a criminal statute) is, at minimum, a genuinely disputed and unsettled legal question—as Marriott's own pleading concedes by devoting paragraphs to arguing the point. Dkt. 38-1 ¶¶ 43–44. A contested characterization of legal compliance "is one of opinion, not one of fact, and cannot as a matter of law support a claim for false advertising under the Lanham Act." *Sierra Shelving, Inc. v. Design Assistance Constr. Sys., Inc.*, 2008 WL 11512374, at *3 (E.D. Va. Apr. 1, 2008).

In fact, Marriott cannot even point to any false factual claim made in the content it challenges. The content referenced in the FAC states that Marriott *may have* violated the law by capturing and sharing users' private information without their knowledge or consent. *See* Dkt. 38-1 ¶ 3 ("Marriott *may* have captured and sold your private data…."); *id.* ¶ 58 ("Marriott *may* have sold your personal info without your consent.") (emphases added). Again, *Marriott readily admits* that its website utilizes "third-party website technologies, including cookies and pixels[.]" Dkt. 38-1 ¶ 39. A statement that Marriott "may have" violated the law in doing so is a far cry from any false statement of *fact*.

The out-of-circuit *Diamond Resorts* decision is thus of no help to Marriott. Dkt. 38-1 ¶ 140 (relying on *Diamond Resorts International, Inc. v. Aaronson*, 371 F. Supp. 3d 1088 (M.D. Fla. 2019)).[19] The plaintiffs in *Diamond Resorts* were able to

---

[19] *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), does no better. *Ohralik* holds only that in-person attorney solicitation is commercial speech subject to professional regulation; it says nothing about whether a legal characterization is an actionable misrepresentation of goods or services under § 1125(a).

rely on a plethora of allegedly false statements of fact, which were highlighted by the statement that the illegality of the plaintiffs' conduct was "easily provable." *Diamond Resorts*, 371 F. Supp. 3d at 1104. Given those allegedly false statements of fact, plaintiffs were able to proceed with a Lanham Act claim. This case, however, is the diametric opposite, because the statements Marriott challenges are not false statements of fact but, rather, statements concerning the legal significance of Marriott's admitted use of the tracking technologies alleged.

*Second*, Marriott's Lanham Act claim fails under the *Noerr-Pennington* doctrine, *i.e.*, the protection that lawyers have under the First Amendment when they engage in conduct incidental to prosecuting a lawsuit.[20] In *Navient Solutions, LLC v. Lohman*, 136 F.4th 518, 525 (4th Cir. 2025), a corporate student loan servicer sued a group of lawyers, marketers, and debt-relief businesses that allegedly "lured dozens of student borrowers into filing sham lawsuits [including arbitrations] against Navient under the Telephone Consumer Protection Act," thereby engaging in violations of RICO, tortious interference with contract, and fraud. *Id.* at 521. Like Marriott, Navient sought the costs of defending the underlying lawsuits and arbitrations. *Id.* at 525. The Fourth Circuit held the defendants' conduct was protected under *Noerr-Pennington*, including all lawyer and non-lawyer conduct incidental to the prosecution of the claims. *Id.* And while the Fourth Circuit declined to address whether *Noerr-Pennington* applies

---

[20] *Noerr-Pennington* similarly precludes state law business torts, like tortious interference. *IGEN Intern., Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003) ("the doctrine has now universally been applied to business torts").

to the filing of private arbitrations,[21] it strongly suggested that *Noerr-Pennington* immunity should apply to pre-filing conduct, such as "efforts to recruit" claimants, insofar as such conduct is incidental to, and preliminary to, the formal filing of a claim. *Navient Sols.*, 136 F.4th at 525 (collecting cases)[22]—*i.e.*, the very conduct for which Marriott seeks to hold Defendants liable here. *E.g.*, Dkt. 38-1 ¶¶ 136-137.

The Fourth Circuit was right to suggest that this conduct deserves First Amendment protection. Indeed, *even Marriott* admits that Defendants were entitled to "inform[] consumers about their rights," and its specific complaint is that, after actual and prospective clients were informed about their rights, they were offered representation against Marriott. Dkt. 38-1 ¶ 139 (alleging Defendants "could have informed consumers about their rights without directing those consumers to client-enrollment webforms"). But if Marriott's view were the law—if law firms could be exposed to liability under the Lanham Act (or for tortious interference) when they educate people about their rights and offer them counsel—there would be significant consequences. Marriott seeks to hold Defendants liable for communicating with actual and potential clients regarding an undisputed fact—in Marriott's words, "Marriott's use of … pixel technology," Dkt. 38-1 ¶ 141—and the legal implications of that fact, including whether Marriott's conduct violates CIPA,

---

[21] Noting a split among district courts, the Fourth Circuit wrote that applying *Noerr-Pennington* to the filing of private arbitrations, rather than the filing of litigation in court, "may have been error." *Navient Sols.*, 136 F.4th at 525. But the Fourth Circuit explicitly did not address the issue because it was not properly raised on appeal. *Id.*

[22] Notably, the Fourth Circuit did not distinguish between "efforts to recruit" claimants who would ultimately file claims in litigation versus arbitration. *Id.*

25

a California criminal statute designed to protect privacy. This is core, jealously protected First Amendment activity. *See Navient Sols.*, 136 F.4th at 525 ("[A]s to pre-suit and non-litigant conduct, courts have generally shown a willingness to immunize conduct incidental to the prosecution of the suit.") (internal quotation marks omitted). If simply denying the legal significance of an undisputed fact could give rise to liability under the Lanham Act (or for tortious interference), then *every* lawyer whose opponent does not readily admit to liability would risk exposure by talking to actual and prospective clients about their potential claims. That is not the law, it is precisely why courts immunize lawyers in their communications with actual and prospective clients, and it amply warrants dismissal of Marriott's Economic Claims.

*Third*, Marriott's intentional delay in raising its Lanham Act claim provides an independent basis for its dismissal. For reasons known only to Marriott, it waited for more than a year, and until it filed its *second* pleading, to seek any relief based on what it now labels as a "campaign … designed to deceive." Dkt. 38-1 ¶ 143. Marriott's tactical assertion of its Economic Claims should be viewed for what it is: a belated effort to manufacture federal jurisdiction for this lawsuit. And because Marriott intentionally delayed its assertion of Economic Claims for more than a year, it is subject to dismissal based on laches. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011) ("Estoppel by laches generally applies to preclude relief for a plaintiff who has unreasonably 'slept' on his rights."). While the Lanham Act contains no limitations period for false-advertising claims, courts

generally borrow the analogous state limitations period and apply the equitable doctrine of laches. *Id.* Where the presumption of laches applies, courts weigh three factors: (1) whether the plaintiff knew of the defendant's adverse conduct; (2) whether the plaintiff's delay was inexcusable or unreasonable; and (3) whether the defendant has been unduly prejudiced by the delay. *Design Gaps, Inc. v. Distinctive Design & Constr. LLC*, 162 F.4th 452, 482–83 (4th Cir. 2025). And where the delay has been patently unreasonable, the Lanham Act claim may be dismissed even if the action falls within an analogous state statute of limitations. *Id.*

*Design Gaps* confirms that laches bars Marriott's Lanham Act claim. In *Design Gaps*, the court held that laches barred a Lanham Act claim where the record showed the plaintiff knew of the challenged conduct, had stated in writing that it believed the conduct was false and misleading, and delayed before suing. 162 F.4th at 482–83. Marriott's own pleading establishes the same sequence here, only more starkly. Marriott asserted a Lanham Act claim, in May 2026, based on the same web content it complained about in March 2025. Dkt. 38-1 ¶¶ 3, 58; *id.* Ex. A. Marriott did nothing to pursue a Lanham Act claim in the interim: it filed no suit, sought no injunction, and never mentioned the Lanham Act in the letters it *did* send to Defendants. Meanwhile, Marriott alleges that Defendants recruited more claimants using the complained-of ads and filed arbitration claims on their behalf. *E.g.*, Dkt. 38-1 ¶ 45. Marriott cannot establish a reasonable basis for its delay; the only inference to draw from Marriott's conduct is that it is trying to gin up the federal jurisdiction its Disqualification Claims lacked. Indeed, after waiting nearly

27

a year to file any claim at all, Marriott *omitted* any Lanham Act claim, only to further delay the resolution of its meritless lawsuit by amending to include the claim two months later. *See Design Gaps*, 162 F.4th at 482–83. Because Marriott's own allegations supply each laches factor, Count IV should be dismissed. *Id.*

III.    **In the alternative, and should any aspect of Marriott's FAC survive, the Court should stay these proceedings in favor of the underlying arbitrations.**

If the Court concludes that Marriott is able to seek disqualification of its adversaries' counsel *and* establish Article III standing, the Court nevertheless should stay these proceedings so that the issue can be addressed, if at all, in the ongoing, underlying arbitrations—the forum in which the lawyers are representing their clients—and not in a standalone, collateral federal case. As addressed above, the authority of a court to disqualify a party's chosen counsel flows from the courts' "inherent power" to "control the proceedings (and the lawyers) *before them*[.]" *Lloyd*, 729 F. Supp. 3d at 500 (emphasis added). But Marriott is not asking the Court to disqualify any counsel from representing a party in *this* case. Instead, Marriott asks the Court to disqualify the chosen counsel of parties that *are not* before it. There is no "inherent power" to control proceedings in other forums, and Marriott cites no basis for exercising such a power in this case. Marriott insisted that claimants bring their claims before the American Arbitration Association. *Supra* at 4 n.5. Thus, *if there were a claim for Marriott to bring* in this regard, the claim should be brought in arbitration—particularly where, as here, the arbitrations already are ongoing with briefing underway (halted only by Marriott's collateral attack here), Marriott is raising a fact-intensive question that it insists is bound up with the merits of the

28

underlying arbitration claims, and arbitral forum rules govern the representation of parties—as both this Court, and the Fourth Circuit, have agreed. *Hibbard Brown & Co., Inc. v. ABC Family Trust*, 959 F.2d 231, at \*3 (4th Cir. 1992); *Hibbard Brown & Co., Inc. v. ABC Family Trust*, 772 F. Supp. 894 (D. Md. 1991).

Likewise, if Marriott could somehow establish that Defendants' protected communications with actual and prospective clients are susceptible to tortious interference and Lanham Act claims, the dispute giving rise to those claims— whether Marriott's admitted use of pixels and other tracking technologies gives rise to CIPA liability—is the very same issue that will be decided in arbitration. Rather than allowing Marriott to try to race ahead of those proceedings with a collateral attack on claimants' claims—and, again, if some aspect of Marriott's Economic Claims survives this Motion—the Court should stay these proceedings so that Marriott's Economic Claims can be revisited, if ever, after the underlying arbitrations have concluded.

## CONCLUSION

The Court should grant Defendants' motion to dismiss. In the alternative, and if any portion of Marriott's Amended Complaint survives, the Court should stay these proceedings in favor of the ongoing, underlying arbitrations.

29

Date: June 26, 2026

Respectfully submitted,

Megan Jenkins (Bar No. 20894)
ECCLESTON & WOLF
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
jenkins@ewmd.com
(410) 752-7474

*Attorneys for Hilliard, Martinez & Gonzales, LLP d/b/a Hilliard Law LLP*

// s // Colin Gillespie
Colin Gillespie, *pro hac vice*
Adam Farra (Bar No. 18599)
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
cgillespie@farrawang.com
afarra@farrawang.com
(202) 505-6045
(202) 505-5990

*Attorneys for Sperling Kenny Nachwalter, LLC*