**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>SPERLING KENNY NACHWALTER, LLC, and HILLIARD, MARTINEZ & GONZALES, LLP, d/b/a HILLIARD LAW,<br><br>Defendants. | Case No. 26-cv-900<br><br>Judge Matthew J. Maddox<br><br>Oral Argument Requested |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. Marriott's Disqualification Claims must be dismissed. .......... 3

A. Marriott identifies no authority establishing or recognizing an independent cause of action for disqualification. .......... 3

B. Marriott lacks Article III standing to pursue disqualification. .......... 7

II. Marriott's Economic Claims must be dismissed. .......... 9

A. The Lanham Act claim fails because Marriott identifies no false statement of fact. .......... 9

B. The Constitution forecloses Marriott's theory of exposing all attorney advertising to Lanham Act liability. .......... 12

C. The tortious interference claim fails three times over. .......... 13

III. If Marriott were able to pursue its claims, they should be resolved in, or stayed pending the outcome of, the ongoing, underlying arbitrations. .......... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*SITEL Corp. v. Stonebridge Life Insurance Co.*,
2007 WL 9780537 (D. Md. July 23, 2007) .......... 5, 6

*United States v. Clarkson*,
567 F.2d 270, 271 (4th Cir. 1977) .......... 5

*Action Air Freight v. Pilot Air Freight Corp.*,
769 F. Supp. 899 (E.D. Pa. 1991) .......... 5

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,
650 A.2d 260 (Md. 1994) .......... 14

*Balt. Sports & Soc. Club, Inc. v. Sport & Soc., LLC*,
228 F. Supp. 3d 544 (D. Md. 2017) .......... 13

*Brown v. Bd. of Educ. of Prince George's Cnty.*,
2022 WL 888424 (D. Md. Mar. 25, 2022) .......... 3

*Dial A Car, Inc. v. Transportation, Inc.*,
82 F.3d 484 (D.C. Cir. 1996) .......... 10

*Diamond Resorts Int'l, Inc. v. Aaronson*,
371 F. Supp. 3d 1088 (M.D. Fla. 2019) .......... 11

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
71 F. Supp. 3d 525 (D. Md. 2014) .......... 11

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 8

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ........ 11

*Hibbard Brown & Co., Inc. v. ABC Family Trust*,
772 F. Supp. 894 (D. Md. 1991) ........ 3, 2, 5

*Hibbard Brown & Co., Inc. v. ABC Family Trust*,
959 F.2d 231 (4th Cir. 1992) ........ passim

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) ........ 12

*Lloyd v. Balt. Police Dep't*,
729 F. Supp. 3d 494 (D. Md. 2024) ........ 4

*NAACP v. Button*,
371 U.S. 415 (1963) ........ 12

*Navient Solutions, LLC v. Lohman*,
136 F.4th 518 (4th Cir. 2025) ........ 12, 13

*Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342 (4th Cir. 2013) ........ 14

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
902 F.2d 222 (3d Cir. 1990) ........ 11

*Scotts Co. v. United Indus. Corp.*,
315 F.3d 264 (4th Cir. 2002) ........ 12

*Sierra Shelving, Inc. v. Design Assist. Constr. Sys., Inc.*,
2008 WL 11512375 (E.D. Va. May 12, 2008) ........ 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 9

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) .......... 8

*United States v. McIver*,
470 F.3d 550 (4th Cir. 2006) .......... 4

*Valve Corp. v. Bucher Law PLLC*,
571 P.3d 312 (Wash. Ct. App. 2025) .......... 14

Statutes

9 U.S.C. §§ 5–10 .......... 7

Rules

Md. Rule 19-300.1, Scope .......... 2

## INTRODUCTION

After two complaints, tens of thousands of words, and a full canvass of authorities on the adjudication of alleged conflicts, Marriott made one thing clear: the law is against it. No authority endorses (let alone compels) what Marriott attempts to accomplish. No authority holds that rules of professional conduct empower adversaries to challenge their opponents' choice of counsel, nor to turn the federal court into a roving ombudsman to oversee supposed conflicts in matters pending in arbitration. The federal courts' inherent authority does not compel this result, nor does the Federal Arbitration Act. In fact, two distinct doctrines forbid it.

*First*, disqualification is not a free-standing cause of action. Dkt. 40-1 at 14–15. That is why every authority of consequence on which Marriott relies, in and out of this Circuit, was ruling on a *motion* brought by a party in a suit that was *already pending* before the Court. Marriott gets nowhere by asserting that the arbitrations are a pending matter, Dkt. 45-1 at 12–13, because they are not matters pending before *this Court*.

*Second*, well-settled standing rules require dismissal. Every case Marriott cites for non-client standing to raise conflicts turned on some access to confidential information by the allegedly conflicted attorney. Dkt. 40-1 at 13 n.13. But Marriott makes no such allegation, and thus asks the Court to break new ground by finding standing here—where Marriott lacks any conceivable injury and, instead, uses the

assertion of a conflict as a weapon. That is *exactly* what the Maryland Attorneys' Rules of Professional Conduct warn against. *See* Md. Rule 19-300.1, Scope.[1]

Because Marriott lacks any conceivable standing, its disqualification claim also fails as a constitutional matter: Article III standing requires a concrete injury redressable by the Court. Marriott has pleaded itself out of court by alleging that its injury is the monetary harm flowing from its obligation to defend itself in the arbitrations while, at the same time, acknowledging that the relief Marriott seeks will not remedy this supposed wrong because the arbitrations (and costs associated therewith) would simply continue with different counsel. Dkt. 40-1 at 12.

Marriott's belated attempt to manufacture jurisdiction with Economic Claims cannot rescue its case. Opinion statements about compliance with the law cannot serve as the basis for Lanham Act claims; lawyers are well within their rights to advise potential clients of Marriott's alleged privacy violations. Dkt. 40-1 at 21–23. That is what a fair reading of the FAC confirms they did. Any other result would gut core protected activity on pain of Lanham Act liability. *Id.* at 25.

To the extent anything is left of the FAC, there is already a forum in which every argument raised by Marriott could or will be resolved: the arbitrations. If Marriott were entitled to seek Defendants' disqualification, it could do so before the arbitration tribunal. Dkt. 40-1 at 28–29. That is the approach the Fourth Circuit affirmed in *Hibbard Brown*, which concluded a disqualification question bound up

[1] Defendants reiterate that there is no conclusive argument as to the applicability of Maryland's rules, and that the rules of every potentially relevant jurisdiction include the same prohibition. Dkt. 40-1 at 9 n.8.

with the merits of a pending arbitration belongs in the arbitration; the *Hibbard* panel was able to reach this conclusion even in the absence of any indication of an arbitration agreement that included counsel. *Hibbard Brown & Co., Inc. v. ABC Family Trust,* 772 F. Supp. 894 (D. Md. 1991), *aff'd by Hibbard Brown & Co., Inc. v. ABC Family Trust,* 959 F.2d 231, at *3 (4th Cir. 1992). And if anything remains of the Economic Claims, the core question they present—whether Marriott did what the advertisements described—is the same question presented in arbitration.

Marriott says it would be unfair and costly to defend itself in arbitration. Dkt. 45-1 at 14. That appeal to unfairness is the reason courts have had sharp words for arbitration defendants when rejecting suits of this nature, Dkt. 40-1 at 2 n.3: Marriott complains about the fairness of the forum it foisted on its customers. This Court should similarly recognize and reject Marriott's gamesmanship for what it is.

## ARGUMENT

### I. Marriott's Disqualification Claims must be dismissed.

#### A. Marriott identifies no authority establishing or recognizing an independent cause of action for disqualification.

In Counts I–III, Marriott pleads three overlapping remedies—a declaration, disqualification, and an injunction—but no underlying substantive right, because "[a] violation of the Maryland Professional Rules of Responsibility does not give rise to a private cause of action against an attorney." Dkt. 40-1 at 1, 8–10, 14–15 (quoting *Brown v. Bd. of Educ. of Prince George's Cnty.*, 2022 WL 888424, at *4 (D. Md. Mar. 25, 2022)). Marriott contends it is not suing for violation of the Rules but,

instead, seeks equitable relief grounded in the Court's inherent authority to protect the integrity of arbitral proceedings. Dkt. 45-1 at 15–16.

Marriott's reframing only restates the problem: no authority creates an independent cause of action by which a party may file a federal lawsuit solely to disqualify its opponent's counsel in a separate proceeding before a different forum.[2] Marriott's tautological response—that the Court's inherent authority reaches lawyers "before" it, Dkt. 45-1 at 12–13, and Defendants are "before" this Court because Marriott filed this suit—has no limiting principle: any litigant could conjure inherent authority over any lawyer in any forum by the expedient of filing a lawsuit. But the words "before them" do real work: they tether the disqualification power to a court's control of its own proceedings. *Lloyd v. Balt. Police Dep't*, 729 F. Supp. 3d 494, 500 (D. Md. 2024).

Marriott concedes that the authority on which it relies involves courts recognizing a party's right to seek disqualification of opposing counsel in an ongoing proceeding before that court. *See* Dkt. 45-1 at 11–13. Those cases establish a right

[2] The declarations attached to the FAC do not alter the pleading analysis. To begin with, Defendants are not required to refute anything, because it is Marriott's burden to plead a claim. Regardless, even accepting Marriott's factual allegations as true, the Court need not accept the legal conclusions of Marriott's ethics declarant that a "disqualifying conflict" exists: expert opinion on questions of law is inadmissible and adds nothing to a complaint's plausibility. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). The FAC overclaims its own computer-science declaration, which opined only that pixels on the intake websites were "capable of" transmitting user data—not that they did. See Dkt. 40-1 at 16 n.15. Finally, the truth or falsity of Defendants' supposition that its allegations have not been shared with claimants is beyond the record, but it does not impact the disposition of the Motion in any event.

to file a motion, and to seek redress, in an ongoing case; they do not establish the right to prosecute an independent action. To the extent Marriott's theory rises or falls on *SITEL Corp. v. Stonebridge Life Insurance Co.*, Marriott loses. In *SITEL*, the court considered a motion to disqualify a party's counsel in an active federal proceeding initiated by that party's own breach-of-contract claim. 2007 WL 9780537, at *1 (D. Md. July 23, 2007). Similarly, in *United States v. Clarkson*, the court ruled on the government's motion to disqualify a criminal defendant from serving as counsel for witnesses in the defendant's criminal case. 567 F.2d 270, 271 (4th Cir. 1977). Both disqualifications arose within ongoing proceedings already properly before the court; neither recognized a right to initiate new proceedings based solely on an equitable claim for disqualification of an opponent's counsel in a separate matter.[3]

Marriott's reliance on *SITEL* dooms its claims. Dkt. 43 at 11, 13–14. *SITEL* acknowledged that a district court may have authority to resolve a disqualification question touching a separate arbitration, but recognized the decision should be left to the arbitral forum where, as here, arbitration has begun and resolution of the

[3] Marriott is not helped by *Action Air Freight v. Pilot Air Freight Corp.,* 769 F. Supp. 899 (E.D. Pa. 1991) (Dkt. 45-1 at 13). The court there assumed, without deciding, that a collateral action could stand on its own, and it was essential to the decision that the arbitrator could not evaluate conflicts. *Id.* at 904. *Hibbard Brown*, by contrast, denied a motion to disqualify, explaining that if a court were to review the question of disqualification, it should do so after the full factual record has been developed in the arbitration proceedings—and the Fourth Circuit affirmed that decision. *Hibbard Brown,* 772 F. Supp. at 897–98 & n.4, *aff'd*, 959 F.2d 231. And again, the overwhelming weight of authority in this Circuit makes clear that Marriott cannot fashion a cause of action out of the Maryland Attorneys' Rules of Professional Conduct in any event. Dkt. 40-1 at 14–15.

disqualification issue necessarily entails an interrogation of the merits of the claims being arbitrated. 2007 WL 9780537, at *3 (quoting *Hibbard Brown*, 1992 WL 69314, at *3). In *SITEL*, the disqualification question turned solely on whether the opposing party was counsel's former client—an issue unrelated to the merits of the underlying claim—and the court still denied disqualification. *Id.* at *5–6. And the Fourth Circuit found it more appropriate to leave disqualification to the arbitrator where, as here, arbitration proceedings had begun and a judicial ruling would have required the same merits fact-finding required of the arbitrator. *Hibbard Brown*, 1992 WL 69314, at *3.

Here, the disqualification Marriott seeks is explicitly grounded in the merits of the arbitrations. Marriott claims the conflict turns solely on Defendants' own pixel use, Dkt. 45-1 at 13, while simultaneously arguing that Defendants are "necessary witnesses" on the merits of the underlying arbitrations by virtue of their knowledge of their own websites, *id.* at 20–21. Both assertions cannot be true. Marriott's own theory is that the claimants' inability to distinguish Defendants' pixel use from Marriott's "would be strong evidence against their claims against Marriott." *Id.* at 21.[4] That is a merits argument, and it confirms that the disqualification inquiry Marriott proposes is inseparable from the questions the arbitrations exist to decide. Marriott's own pleading concedes the point: the FAC alleges, three times, that the allegations supposedly giving rise to disqualification

[4] Of course, if the inquiry is focused on *claimants'* knowledge, then their counsel are not, and cannot be, necessary witnesses—further confirming that Marriott's "necessary witness" argument has no merit.

have "substantive centrality to the issues in the case." *E.g.*, Dkt. 38-1 ¶¶18, 96. By Marriott's own account, the very circumstances that led *SITEL*, and the Fourth Circuit in *Hibbard*, to defer to the arbitral forum are present here.

In a final attempt to salvage its claim, Marriott points to the Federal Arbitration Act. Dkt. 45-1 at 14. There is a reason Marriott has no cases to cite here: the Court's supervisory FAA authority is explicitly enumerated by statute, and the statute does not include conflict motions. *See* 9 U.S.C. §§ 5–10. No authority supports the assertion that the federal court's supervisory role permits parties to an arbitration clause (like Marriott) to skip out of arbitration when it suits their purposes. That would pervert, rather than enhance, the "strong federal policy" favoring arbitration embodied in the Act. *Hibbard Brown*, 1992 WL 69314, at *2.

**B. Marriott lacks Article III standing to pursue disqualification.**[5]

Marriott pleads no injury in fact: a party is not injured by alleged conflicts of its opponents' lawyers. Nor does it plead a redressable injury, as disqualification would simply substitute new counsel to pursue the same claims. Dkt. 40-1 at 11–13. Marriott responds that it is injured by "being forced to defend" arbitrations "tainted" by supposedly concealed conflicts and by front-loaded arbitration fees, and that unconflicted counsel would somehow redress those harms. Dkt. 45-1 at 16–18.

[5] As Defendants explained, standing must be evaluated as to each claim asserted by Marriott. Dkt. 40-1 at 11 n.11. Thus, even if Marriott could establish standing to bring its Economic Claims, its failure to establish standing as to its Disqualification Claims still would require their dismissal.

But defending a lawsuit, and defending a lawsuit against lawyers you don't like, are not different injuries. Standing requires an injury in fact, caused by the defendant's conduct, that would likely be redressed by the relief sought. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Even under Marriott's flawed theory, the premise that Defendants' alleged conflict "could materially limit" their representation of Marriott's opponents does not describe harm *to Marriott*.[6] This is why the body of authority on which Marriott relies is beside the point: every case Marriott cites to establish standing for non-client conflicts-challenges turned on confidential former client information that could be used unethically in the context of an adversary proceeding, and thus cause injury to the complaining party. Dkt. 40-1 at 13 n.13 (collecting cases). Marriott makes no such allegation here, and there is no authority for the notion that Marriott can claim constitutional injury in fact by alleging that the counsel of its arbitration opponents has a purported conflict of interest. Nor can Marriott change the analysis by labeling its claim as seeking to ensure "the integrity of proceedings." *See Summers v. Earth Island Institute*, 555 U.S. 488, 496–97 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing"). Marriott's generalized grievance is insufficient to establish standing.

[6] It is also a purely speculative harm, and thus not entitled to any weight. Dkt. 40-1 at 17–18. Marriott likewise failed to establish Defendants will be "necessary" witnesses. *Id.* This, too, merits dismissal. *Id.* Finally, Marriott's inability to point to any particularized conduct of each Defendant also merits dismissal, notwithstanding rules on attorney advertising. *Id.* at 16–17.

As for the expense of defending the arbitrations, which is the "injury" Marriott actually attempted to plead, *e.g.*, Dkt. 38-1 ¶129, the expense is the product of Marriott's own Terms of Use compelling arbitration. The expense will be incurred regardless of whom claimants choose as their counsel. Marriott has, in fact, pleaded as much: if, as Marriott itself proposes, claimants "obtain[ed] loyal, unconflicted counsel," Dkt. 38-1 at 42, the arbitrations would not disappear, and neither would Marriott's expense of defending them.

Because Marriott pleads no injury caused by the alleged conflicts that would be redressed by Defendants' disqualification, Marriott has pled itself out of constitutional standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–10 (1998) (ordering dismissal for lack of standing where "none of the relief sought" would "likely remedy" the plaintiff's alleged injury). The Disqualification Claims thus fail at the threshold and must be dismissed.

## II. Marriott's Economic Claims must be dismissed.

### A. The Lanham Act claim fails because Marriott identifies no false statement of fact.

The FAC identifies no false or misleading statement of fact: Marriott admits it uses pixels and tracking technologies, and disputes only the legal significance of that admitted conduct. Dkt. 40-1 at 21–24.

Marriott's response is a dramatic narrowing of its claim.[7] The FAC excerpted images from what Marriott claimed was a months-long advertising "campaign" and

[7] Contrary to Marriott's argument, subject-matter jurisdiction and standing are not a "sideshow" (Dkt. 45-1 at 21); they are core requirements to proceed in this Court.

quoted an assortment of solicitations—"Do I Have A Case?"; "Let us help you get compensated"; "Marriott may have sold your personal info without your consent," Dkt. 38-1 ¶¶3, 58—without ever specifying which statements were false, or why. Defendants pointed out that these solicitations were made up of non-actionable opinion statements. Dkt. 40-1 at 21–23. So Marriott now abandons the balance of the campaign and stakes its entire claim on seven statements. Dkt. 45-1 at 4–5. Sorting those seven statements fairly reveals that each is an opinion about contested legal compliance, rhetoric incapable of verification, or literally true.[8]

The first group—that Marriott (1) "broke the law by capturing" visitors' information "without [their] knowledge or consent," (2) "violated California law," (3) committed conduct that "isn't just wrong. It's illegal," and (4) "sold [private information] for profit, leaving you exposed," Dkt. 45-1 at 4–5—are characterizations of legal compliance based on underlying facts that are not in dispute. Whether Marriott's pixel use violates CIPA is, at most, a genuinely contested legal question; the FAC concedes as much by arguing the point. Dkt. 38-1 ¶¶42–44. A contested characterization of legal compliance cannot as a matter of law support a claim for false advertising under the Lanham Act. *Sierra Shelving, Inc. v. Design Assist. Constr. Sys., Inc.*, 2008 WL 11512375, at *3-6 (E.D. Va. May 12, 2008); *accord Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 488–89 (D.C. Cir. 1996) (dismissing when asserted illegality turned on an unresolved regulatory

[8] To be clear, Defendants do not concede that any challenged statement is false; the point is that the first two categories are not actionable regardless of their truth.

interpretation); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230–31 (3d Cir. 1990) (same).[9]

The second group includes statements that Marriott "betrayed your trust" and "betray[ed] the trust of those who relied on them," Dkt. 45-1 at 5. These statements lie beyond the boundary of any authority Marriott cites or any Defendants have located. A "betrayal of trust" is not "capable of being shown true or false in a way that admits of empirical verification," Dkt. 45-1 at 25 (quoting *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 554 (D. Md. 2014)); it is rhetorical, subjective, and quintessentially non-actionable. Marriott cites no case holding otherwise; there is none.

That leaves the statement that, because of Marriott, "[m]ore than 133 million people had their personal information exposed in one of the largest data breaches in history." Dkt. 45-1 at 5. But that statement is literally true. Reviewed in the full context that Marriott's cropped excerpts do not show the Court, see Dkt. 38-1 ¶58,[10] the "133 million" statement refers to the Marriott/Starwood data breach: the

---

[9] Marriott's attempt to confine *Sierra Shelving* to "ambiguous building code regulations," Dkt. 45-1 at 26, fails on its own terms: there is a clear legal basis to assert Marriott's customers have a colorable CIPA claim with respect to Marriott's pixel use. *See* Dkt. 30-1 at 7 n.7 (collecting cases). Nor can *Diamond Resorts* assist Marriott: that campaign was actionable because equivocal phrases were coupled with "direct, unequivocal statements" that illegality was "easily provable," and the statement as to provability was, on a full record, demonstrably false. *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1104–05 (M.D. Fla. 2019).

[10] The FAC pleads advertisements and solicitation webpages by URL and excerpt. *E.g.*, Dkt. 38-1 ¶¶3, 58. The Court can thus consider the full pages, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016), including as archived here: https://web.archive.org/web/20241204223654/https://legalsettlementexperts.com/marriott-v2/

incident, disclosed in 2018, in which the personal information of approximately 133 million U.S. consumers was exposed—by any measure "one of the largest data breaches in history"—and which spawned multidistrict litigation in this District.[11] A true statement cannot support a Lanham Act claim. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

### B. The Constitution forecloses Marriott's theory of exposing all attorney advertising to Lanham Act liability.

Marriott's theory—Lanham Act liability for communicating with actual and prospective clients about an adversary's conduct and its legal consequences—would chill protected solicitation and advocacy. Dkt. 40-1 at 25–26. Marriott responds that attorney advertising enjoys no immunity from false-advertising law. Dkt. 45-1 at 22.

Marriott misses the point. The Constitution protects truthful advertising about lawful legal services. *NAACP v. Button*, 371 U.S. 415, 435 (1963). The Fourth Circuit has recognized as much. *Navient Solutions, LLC v. Lohman*, 136 F.4th 518, 525 (4th Cir. 2025), did not reach the question whether *Noerr-Pennington* protection reached conduct in connection with an arbitration. But *Navient* makes clear why it should. Marriott, in its zeal to wish *Navient* away, Dkt. 45-1 at 27–28, ignores that the challenged communications here preceded the filing of associated claims. First Amendment protection cannot be made to turn on a litigant's (or, here, Marriott's) choice of forum; that is why the *Navient* court specifically noted that

[11] *In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (explaining Marriott International, Inc. was "subject to a massive data breach" in November 2018, affecting "roughly 133.7 million guest records within the United States").

*Noerr-Pennington* protections extend to "pre-suit and non-litigant" conduct like "efforts to recruit" claimants. *Navient*, 136 F.4th at 525. That protection decides this case: literally all of the conduct Marriott challenges is attorney advertising (as Marriott admits, Dkt. 45-1 at 27)—definitionally "pre-suit and non-litigant" conduct—and *Navient* nowhere limited that protection to conduct preceding litigation rather than arbitration. Whatever Marriott's arbitration clause may be, it cannot be an end-run around the First Amendment; the Court should not construe it as such.[12]

### C. The tortious interference claim fails three times over.

Marriott's intentional interference claim identifies no independently wrongful act apart from the Lanham Act theory; the FAC pleads no specific intent to injure Marriott's business; and Maryland's absolute litigation privilege immunizes statements rationally related to contemplated judicial and quasi-judicial proceedings. Dkt. 40-1 at 19–21. Marriott responds that the wrongful act is the false advertising itself, that intent may be inferred because Defendants "needed Marriott's customers to stop using Marriott's website," and that the privilege cannot reach "attorney advertising." Dkt. 45-1 at 22–24.

Marriott is wrong on all counts. *First*, the wrongful-act element rises and falls with the Lanham Act claim—Marriott identifies no other unlawful conduct—so the failure of Count IV disposes of Count V. *See Balt. Sports & Soc. Club, Inc. v.*

[12] Marriott's tortious interference claim can and should be dismissed on the same grounds. Dkt. 40-1 at 24 n.20.

*Sport & Soc., LLC*, 228 F. Supp. 3d 544, 551–52 (D. Md. 2017). *Second*, Marriott's intent theory refutes itself: the claim that Defendants wanted claimants to stop patronizing Marriott in order to preserve their credibility as claimants—even if it were anything more than baseless speculation (which the Court is entitled to disregard, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013))—would describe litigation strategy in service of clients, not the "specific purpose" of harming Marriott's business. *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269–70 (Md. 1994). Defendants operate no hotels and are agnostic as to Marriott's hospitality business. Dkt. 40-1 at 21. *Third*, as to privilege, Marriott concedes the doctrine reaches pre-proceeding communications for proceedings "contemplated in good faith and under serious consideration," Dkt. 45-1 at 22. The FAC pleads that the challenged communications were solicitations to bring the claims Defendants brought on claimants' behalf. Dkt. 38-1 ¶¶48, 58, 97. On materially indistinguishable facts, the privilege barred interference claims in *Valve Corp. v. Bucher Law PLLC*, 571 P.3d 312, 320–21 (Wash. Ct. App. 2025).

**III. If Marriott were able to pursue its claims, they should be resolved in, or stayed pending the outcome of, the ongoing, underlying arbitrations.**

Defendants asked in the alternative that the Court stay this action in favor of the underlying arbitrations. Dkt. 40-1 at 28–29. Marriott responds that a stay would be "futile" because Marriott and Defendants have no arbitration agreement. Dkt. 45-1 at 29–30. Marriott's futility point inverts the inquiry. The question is not whether Marriott may arbitrate claims against Defendants; it is where the disqualification question Marriott presses should be answered. If Marriott were

entitled to raise the issue, disqualification can and should be resolved in the forum where the underlying dispute is already proceeding. The Economic Claims should be stayed—not arbitrated—because the same core questions will be resolved there in any event. Indeed, the lawfulness of Marriott's pixel practices—the linchpin of Marriott's falsity theory, *supra* § II.A—is the central merits question in the arbitrations that Marriott's Terms compel. The alternative (should the Lanham Act claim survive) is that this Court hold a mini-trial on the CIPA claims being pressed in the arbitration to answer the antecedent question about falsity upon which the Lanham Act claim depends.

The Court should not do that. The propriety of claimants' counsel is a question the arbitral forum is equipped to address. A stay avoids the duplicative, merits-entangled fact-finding that led the Fourth Circuit to leave disqualification to the arbitral forum in *Hibbard*, 1992 WL 69314, at *3. If any portion of the FAC survives, the Court should thus stay these proceedings pending the arbitrations.

Date: August 18, 2026

Respectfully submitted,

Megan Jenkins (Bar No. 20894)
ECCLESTON & WOLF
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
jenkins@ewmd.com
(410) 752-7474

*Attorneys for Hilliard, Martinez & Gonzales, LLP*

// s // *Colin Gillespie*
Colin Gillespie, *pro hac vice*
Adam Farra (Bar No. 18599)
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
cgillespie@farrawang.com
afarra@farrawang.com
(202) 505-6045
(202) 505-5990

*Attorneys for Sperling Kenny Nachwalter, LLC*